Butler v. Imhoff.

O. J. BUTLER, Appellant, v. JACOB IMHOFF.

Division One, December 23, 1911.

1. **EXECUTION: Return: Levy: Sale.** The statutes governing the sale of lands under execution do not require an execution to be returned upon the first day of its return term, nor is a levy before the first day of the return term necessary to continue the execution in force during that term. The levy may be made or the execution may be returned at any day during the return term, and the sale of the lands by the sheriff during that term would be effectual even though nothing had been done under the writ prior to that term.

Butler v. Imhoff.

2. ————: **Levy: Recital in Sheriff's Deed: Effect.** The recital of a levy in a sheriff's deed to lands sold under execution being neither required nor sanctioned by the statute, such recital is mere surplusage and should be rejected in considering the prima facie effect of the deed. *Held*, in this case, that a sheriff's deed under an execution returnable to the September term, 1900, of the court is prima facie valid, although it recites that the sheriff "did on the 19th day of November, 1900, levy upon" the land in controversy—this when the September term continued beyond the last mentioned date.

3. ————: **Sheriff's Deed: Necessary Recitals: Levy.** The things necessary to the validity of the title are to be recited in and proved by the sheriff's deed to lands sold under execution. The deed must recite the execution and the matters stated therein, but not such matters as may be entered by the officer upon its back. The deed must show the manner in which the land was sold. This necessarily includes the fact that notice was given. These are the only things the officer is required to do when real estate is "taken" in execution, and they constitute the "taking." These acts all constitute the "levy," and any one of them is equivalent to taking the land in execution under the provisions of Sec. 2218, R. S. 1909.

4. **SHERIFF'S DEED: Corrected by Ex-sheriff: Sec. 2237, R. S. 1909.** By virtue of the provisions of Sec. 2237, R. S. 1909, a sheriff may make, after his term has expired, a valid corrected deed to real estate sold by him under execution while in office.

Appeal from Bollinger Circuit Court.—*Hon. Charles A. Killian,* Judge.

REVERSED AND REMANDED.

*Russell & Deal* for appellant.

The necessary recitals of sheriffs' deeds are: First, names of the parties to the execution; second, the date when issued; third, the date of the judgment, order or decree, and other particulars as recited in the execution; and, fourth, description of the property, the time, place, and manner of the sale. R. S. 1909, sec. 2231. The foregoing recitals inform everybody of everything necessary to be known, and all else may be regarded as simply directory. Wilhite v. Wilhite, 53 Mo. 71; Davis v. Kline, 76 Mo. 310. The date of the

levy of the execution was not a necessary recital of the sheriff's deed and a failure to recite the levy would not have vitiated the deed. Foulk v. Colburn, 48 Mo. 229; Buchannan v. Tracy, 45 Mo. 439. Under the authorities last cited, the first deed executed by the sheriff was sufficient to pass the title notwithstanding the erroneous recital as to the date of the levy, if there was in fact a levy made before the return day of the execution. When the error in the first deed was called to the attention of the sheriff, who in the meantime had retired from office, he had a perfect right, and in fact it was his legal duty to make a new deed for the purpose of correcting the error in his former deed. And in order for him to do this all that was necessary for him to know was that he had made an error in his former deed. This the sheriff did, and the amended deed having the necessary recitals was sufficient to pass the title and should have been admitted in evidence. Land & Lumber Co. v. Franks, 156 Mo. 688; 19 Am. and Eng. Ency. Law (1 Ed.), 457.

*Wilson Cramer* for respondent.

(1) A levy before the return day is essential to a valid execution sale. If made after the return day, the levy is void, the execution being *functus officio*. Lackey v. Lubke, 36 Mo. 115; Bank v. Bray, 37 Mo. 194; McDonald v. Gronefeld, 45 Mo. 28; City of Jefferson v. Curry, 71 Mo. 85; Rover on Jud. Sales (2 Ed.), sec. 700; Freeman on Ex., sec. 106. (2) Unless otherwise directed by the party in whose favor it is issued, every execution is returnable at the next succeeding term of court. R. S. 1889, sec. 4898; Milburn v. State to use, 11 Mo. 191. (3) The first day of the term to which an execution is returnable is the return day. Karnes v. Alexander, 92 Mo. 660; 3 Black. Com., 278; Bank v. Tome, 2 Spear's Law (S. C.) 501; State v. Commissioners, 37 N. J. L. 394; Browning v. Jones, 4 Humph. (Tenn.) 69; Cash v. Tozer, 1 W. & S. (Pa.)

526. (4) An execution is presumed to have been returned, i. e., filed with the clerk, on the return day. Marks v. Handy, 86 Mo. 238. (5) The deed recites that the levy was made November 19th, after the return day of the writ, and is therefore void on its face. See authorities under Point 1. (6) Although the statute does not require in express terms that the officer shall state in his deed the date of levy, the recital of a levy, on a particular date, is the official statement of a material fact which must have occurred to authorize the sale, and one which must be shown by the return on the execution. Since both the time when the writ was delivered to the officer, which is directly required by statute, and the return must be indorsed on the execution, these facts should be held to fall within that clause of the statute relating to sheriff's deeds, which says that they shall set out the date of the judgment, order or decree, "and other particulars as recited in the execution." The recital of the time of levy is binding on the officer and the purchaser. Jordan v. Surghnor, 107 Mo. 520; Scharff v. McGaugh, 205 Mo. 357. (7) In the sale of land under execution the sheriff acts in the exercise of a statutory power, which is exhausted when he has executed and delivered a complete and perfect deed to the purchaser. He cannot afterwards make a new deed contradicting the recitals of the first. Ware v. Johnson, 66 Mo. 662; Hovey v. Wait, 17 Pick. 196; Thornton v. Miskimmon, 48 Mo. 222. The second deed is not an "amended" deed, but a new deed contradicting the recitals of the first, and is void. (8) It is well settled that the right of an officer to amend his return is not absolute, but that the power to allow amendments rests in the court, to be exercised upon such terms as may be just. Feurt v. Caster, 174 Mo. 289; Little Rock Trust Co. v. Railroad, 195 Mo. 669. Such being the law as to returns, how can an officer be permitted without leave of court, without memorandum, and upon his mere recollection,

or assumed recollection, to destroy or change a former conveyance by executing another?

BROWN, C.—This is an appeal from a judgment for the defendant in ejectment brought in the New Madrid Circuit Court, January 25, 1907, to recover a section of land in that county described as section five in township twenty-four of range fifteen, and removed to Bollinger county by change of venue. The plaintiff claims through the defendant, who admits his possession, by two sheriff's deeds founded upon one sale made under an execution issued upon a judgment of one Depoyster against the defendant in the New Madrid Circuit Court for one hundred and fifty-one dollars and eighty cents, entered at the March term, 1900. The execution was issued July 28, 1900.

The September term, 1900, of the New Madrid Circuit Court adjourned on September 26th, the eighth day of the term, until December 3d, when it again adjourned until December 5th, on which day the land was sold by the sheriff, J. A. P. Willett, to James V. Conran and W. L. Stacy, through whom the plaintiff deraigns his title. The sheriff's deed to them was made the same day, and acknowledged at the following March term.

This deed contains all the statutory recitals, stating, among other things, that the sheriff "did *on the 19th day of November*, 1900, levy upon and seize all the right, title and interest of the said Jacob Imhoff" in the land conveyed, and the facts showing due advertisement of the sale. It purported to convey the section in controversy and section nine in the same township and range. It was acknowledged in open court, and the acknowledgment ordered by the court to be indorsed upon the deed, which was offered in evidence by the plaintiff. The defendant objected to its introduction on the ground that it is void on its face, be-

cause it recites a levy made after the return day of the execution. The court admitted it ''subject to objection,'' to which plaintiff excepted.

The plaintiff then offered another deed to the same land to the same grantees, dated December 17, 1906, purporting to be made ''for the purpose of correcting the erroneous recital'' that ''said land was not levied upon until the 14th day of November, 1900.'' It was, in other respects, like the former one, except that it recited that the levy was made on the 17th day of August, 1900. This deed was made and signed by J. A. P. Willett, as ''late sheriff of the county of New Madrid and State of Missouri,'' and was acknowledged by him as such late sheriff, in open court on the same day, and during the September term of the New Madrid Circuit Court, and the court thereupon ordered the certificate of acknowledgment to be indorsed by the clerk upon the deed.

The introduction of this deed was objected to by the defendant on the ground that the ex-sheriff had no right to make the amended deed more than five and a half years after the acknowledgment of the other, without an order of the court. This objection was sustained and plaintiff excepted.

Plaintiff then proved that the files in the Depoyster case, including the execution, were either lost or had been destroyed in a fire that burned the New Madrid courthouse in September, 1905, and introduced deeds showing title to whatever interest Conran and Stacy, the execution purchasers, could convey, and offered in evidence a deed of trust from Jacob Imhoff, dated February 16, 1896, conveying the lands to the Alexander County Savings Bank of Illinois, to secure the payment of a note, but without offering to connect himself with it in any way. He also introduced without objection a proof of publication in the ordinary form of a notice of sale under the same execution

of the land in controversy and section nine, in township twenty-four, range *eleven,* to be held September 19, 1900, and evidence tending to show that on the first day of the September term this sale was postponed on account of the mistake in the advertisement describing section nine as being in range eleven instead of range fifteen. This notice was first published on August 18, 1900. One of his witnesses, Mr. Conran, who is a lawyer, and was contemplating purchasing at the sale, came to New Madrid on the first day of the September term. He said in his testimony: "I was shown the publication, shown his execution, and he had levied the same prior to the date of the sale in proper time, and on the proper land, and the printer had made a mistake in the description of one part of it, as I remember, and the land was incumbered, and for that reason that the misdescription had been made on a portion of it, the sale was not had in September. That is my recollection of it."

At the close of plaintiff's evidence the defendant demurred to it, the demurrer was sustained by the court, to which plaintiff saved his exception, and the court entered its judgment, and after the overruling of a motion for a new trial, to which plaintiff saved his exception, this appeal was taken.

I. The first question presented in this record and by the briefs of counsel is whether or not the first deed made by the sheriff to effectuate the execution sale under the Depoyster judgment is prima facie valid and effectual to convey the title of defendant. It is attacked solely upon the ground that it recites that the levy was made after the first day of the September term of the New Madrid Circuit Court to which it was returnable, that the law required that it should, on that day, be returned to and filed in the court that issued it, and that it then, whether so filed or not,

became *functus officio,* so that any action taken by its authority would be void.

The whole subject of the appropriation of the lands of a judgment debtor by execution has, in this State, been pretty well covered by statute, to which we must primarily look for information, and it is only the gaps that are left which we must fill by resort to the rules of the common law which are enacted for such purposes. [R. S. 1909, sec. 8047.] The statutes provide (R. S. 1909, sec. 2175) that "every execution issued from any court of record shall be made returnable at the next succeeding term, unless the plaintiff, or person to whose use the suit was brought, shall otherwise direct; then it shall be the duty of the clerk issuing the same to make it returnable to the next succeeding term." Whatever this may mean, it is, of course, not in the power of either the clerk or court to modify it. These words are simple and direct in their meaning, and neither say nor imply that the execution must be returned on the first day of the term. The Legislature appears to have applied the same interpretation, for, in section 2228, in which it is provided that, "In all cases where an execution is or shall be issued and levied by the proper officer upon real estate, and for any cause a sale of such real estate shall not be made at the next term of the court of the county in which such sale is to be made, the execution and lien created thereby shall remain and continue in force until the end of the second term of the court of the county where the land is situated, and until a term of said court is held, at which said real estate may be sold according to law." There is no hint here that any mandate of the Legislature is necessary to keep the execution in force during the return term; that is taken for granted. But the needful thing is done. The whole of the next term is made its "return day." In Lackey v. Lubke, 36 Mo. 115, a case cited by respondent in his brief, and in which an execution sale

was in question where the "execution had run for a greater time than that allowed for two executions," Judge LOVELACE, for this court, citing Revised Statutes 1855, p. 748, section 54, which differs from the one we last quoted in containing the words, "without any fault of the officer," said: "This section evidently goes upon the idea that the execution would be in force at the first term, and then if, without any fault of the officer, no sale is made, the execution is continued in force to the next term."

The respondent insists, notwithstanding these provisions of the statute, that a "levy" in vacation is necessary to continue the execution in force during the return term. The question, what is a levy upon real estate, considered in the abstract, is one of the pleasantries of the law, but when concretely applied to one's property rights, it becomes entitled to the most serious consideration. This court has confessed that the law is silent as to what acts are necessary to constitute a levy. [Duncan v. Matney, 29 Mo. 368; Slattery v. Jones, 96 Mo. 216.] It seems never to have attempted a definition, but in Lackey v. Lubke it assisted us materially in the consideration of this question. Still speaking of the section of our statute last quoted, it said: "If the mere indorsement of a levy on the back of an execution would keep it alive, this section would be unnecessary; for the sheriff could indorse the levy on the back of the execution on the same day it is issued. But what effect has a levy on real estate? or, in other words, the mere indorsement on the execution that the sheriff has levied it on certain real estate? It is not felt by the defendant—it is, perhaps, not even known by him—until the land is advertised for such sale, and it has not infrequently been held that no levy need be indorsed on the execution at all." The vague and illusive character of the thing which may present itself to the judicial mind in answer to the call of the "levy" finds an apt illus-

tration in the leading case of Rogers v. Bonner, 45
N. Y. 379. In that case Crouse, on November 26, 1866,
commenced suits against Bonner, in which he procured
two warrants of attachment. In the afternoon of that
day the sheriff went to the house occupied by Bonner
to look for the books of account of Bonner and Pel-
ton, which he did not find. While there, without in-
forming Bonner or his wife that he had or should
seize the house or lot, he made a pencil memorandum
of them on a loose piece of paper, *with intent to seize
them* under the attachment. The next day the judg-
ments of the plaintiff were perfected and docketed.
It does not appear in the published case whether the
"loose piece of paper" was ever seen after it had
been written upon. The question was directly pre-
sented whether or not the attachments or the judg-
ments were the prior lien. The court held in favor of
the attachments, on the ground, apparently, that the
sheriff, when he wrote down their description, in-
tended to make a levy, thus making the title depend
on the state of mind of the sheriff when he wrote a
meaningless memorandum on a piece of paper having
no connection with the case. The danger of such a
doctrine appears from its statement.

The Legislature has tried consistently to avoid this
danger. It was early enacted (R. S. 1835, p. 254, sec.
10) that the clerk of the court shall "keep in his office
a well-bound book, and enter therein an abstract of
all executions issued out of his office, showing the date,
the names of the parties, amount of debt, damages and
costs, to what officer directed, the return (if any) and
a reference to the book and page wherein the judg-
ment, order or decree whereon such execution issued
is entered. And every such clerk shall, moreover,
keep a regular index to such abstract of executions,
arranged alphabetically, both by the name of the plain-
tiff and defendant therein," and that (Ib., p. 256, sec.

238 Sup.—38

18), the officer, upon its receipt, shall indorse on the writ the day of the month and year when he received the same, and that "When real estate be taken in execution by any officer, it shall be his duty to expose the same to sale, at the court house door on some day during the term of the circuit court of the county where the same is situated, having previously given twenty days' notice of the time and place of sale, and what real estate is to be sold, and where situated, by at least six hand bills, signed by him and put up in public places, in different parts of the county, or by advertisements in some newspaper printed in the county." [Ib., sec. 38.] The same act (Ib., p. 259, sec. 45) provides that the officer "shall make to the purchaser a deed . . . reciting the names of the parties to the execution, the date when issued, the date of the judgment, order or decree, and other particulars as recited in the execution, also a description of the property, the time, place and manner of sale, which recital shall be received as evidence of the facts therein stated." This deed is, by an acknowledgment, or proof in open court, to pass under judicial observation, and to be further published upon the records of deeds; and is then ready to be introduced, without further proof of its validity, "in any court of this State," as evidence of the title which it purports to convey.

All these provisions were continuously in force during the sixty-five years that have intervened between the time they were built into one general scheme for levying a judgment debt against the lands of the debtor by execution, and the making of this deed, and are still in force. We have quoted from them so fully, to show that they are not, in their relation to the older systems which had attempted to apply the nomenclature of the common law to a new use, patches of new cloth sewn into an old garment, thereby making the rents worse, but that they constitute a plan admirable for its simplicity, by which officers are clothed

with the power to make land available to a writ which was originally framed for application to personalty only. The things necessary to the validity of the title are to be recited in and proved by the deed. It must recite the execution and the matters stated therein, but not such matters as may be entered by the officer upon its back. The deed must show the manner in which it was sold. This necessarily includes the fact that notice was given. These are the things, and the only things, the officer is required to do when real estate is "taken" in execution, and constitute the "taking." The words "actual seizure" used in section 2195, Revised Statutes 1909, are equivalent to the word "taking" as its past participle is used in sections 2218 and 2221. In fact the very first definition of the word "take" in Webster's International Dictionary is "to lay hold of; to grasp; seize;" and the second, "to gain control or possession of in any way." These acts of the officer all constitute the "levy" under the execution and any one of them is equivalent to taking the land in execution under the provisions of section 2218. The officer has only to follow the statute, and is not required to do something not designated in it, and which this court has, thus far, failed to define. These omissions seem to have been intentional, for, by section 2199, which deals with those cases in which it is necessary to establish the lien of the execution, a method is provided for making a levy which amounts to a public appropriation of the land upon the records of the recorder of deeds.

The recital in the deed of a levy being neither required nor sanctioned by the statute, such recital, as contained in the deed in question, is mere surplusage, and should be rejected in considering its prima facie effect. [Shelton v. Franklin, 224 Mo. 342, 367; Hunter v. Miller, 36 Mo. 143, 147.] For this reason, and for the further reason that the sale of the land by the sheriff during the return term of the execution would

be effectual, even though nothing had been done under the writ prior to that term, we hold that the first sheriff's deed is prima facie valid, and that there is nothing in plaintiff's evidence tending to impair such force and effect.

We have carefully read all the Missouri authorities cited by respondent and find none of them inconsistent with the foregoing conclusion. It is true that in Karnes v. Alexander, 92 Mo. 660, NORTON, C. J., speaking for this court, said that counsel contended, and it might be conceded, that the first day of the term to which a writ of execution is made returnable is the return day, but he proceeded to show that such a doctrine would not control the case in hand because the execution was issued upon a judgment of a justice of the peace enforcing a special taxbill against the land sold. He held explicitly that where the judgment designates the land to be sold, the execution issued thereon continues during the entire return term.

II. Had the instrument we have been considering been absolutely void so that it would be equivalent to no deed, as is claimed by the respondent and held by the trial court, it was still competent for the sheriff who made the sale, after his term of office expired, to consummate such sale with the deed as was done in this case. [Land & Lumber Co. v. Franks, 156 Mo. 673, 689; Griffin v. Franklin, 224 Mo. 667, 683.]

The admirable scheme of the statute we have been considering includes this contingency also, and demonstrates the foresight of the Legislature which framed it, and by its terms removes the very objections which are here urged against it in argument.

Section 2237, Revised Statutes 1909, which is also continued from the Act of 1835, provides: "When any officer shall have levied upon any goods and chattels, real estate or other effects by virtue of any execution, and the term of service of such officer shall expire and

be determined before or after the sale thereof, and before the purchasers shall have obtained a deed therefor, duly executed, such officer shall, nevertheless, have power to do and perform all things in relation to such execution and the sale of such property, and in making, acknowledging and executing a deed to the purchaser, in the same manner and like effect, to all intents and purposes, as if his term of office had not expired; and he and his sureties shall be subject to the like penalties, actions, proceedings and judgments for neglect, misconduct or failure therein, as if he still continued in office.''

It will be observed that this section applies only to such officers as have terminated their official relation by the expiration of their term of office, leaving their capacity to act in all other respects unimpaired; and it imposes upon them and their bondsmen responsibility for the completion of important duties undertaken during their terms, many of the details of which would necessarily be preserved in their memories only.

Section 2239, referred to by Judge BURGESS in Land & Lumber Co. v. Franks, supra, applies entirely to a different class and is framed upon a different theory. It provides that ''when any officer shall die, be removed from office or disqualified, or shall remove from this State, after the sale of any property and before executing a conveyance therefor, as required by law, or after executing a defective conveyance therefor, the purchaser, his grantee, or any one claiming by, through or under the purchaser,'' may, by verified petition, apply to the court for a deed, and that if the court is satisfied that the purchase money has been paid, it shall order the sheriff then in office to execute, acknowledge and deliver the same.

These two sections cover the whole ground of the execution of deeds after the sheriff who made the sale had ceased to hold the office; one of them applying to

those officers who retain their natural and moral capacity to perform the duties imposed, and the other to those cases in which such capacity has ceased.

For the reasons stated, the judgment of the circuit court will be reversed and the cause remanded for such proceedings as shall be consistent with this opinion. *Bond, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur.